IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Case No. 1:23-cv-00926-RDB

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

    Plaintiff,

v.

NEW KIANI'S PIZZA & SUBS, INC.,

    Defendant.

### PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION ON MOTION FOR DEFAULT JUDGMENT

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff") respectfully makes the following objections to the March 8, 2024 Report and Recommendation on Motion for Default Judgment (the "Report") [D.E. 20].

### INTRODUCTION

Magistrate Adam Abelson (the "Magistrate") was tasked with reviewing Plaintiff's Motion for Default Judgment [D.E. 11] against defendant New Kiani's Pizza & Subs, Inc. ("Defendant") and making recommendations with respect to Plaintiff's damages. The Magistrate generally performed a detailed and thorough analysis of the issues, and Plaintiff does not take issue with the vast majority of the Report. As set forth herein, Plaintiff does object to the Report in two (2) key respects: (a) the finding that Plaintiff has not established Defendant's conduct was 'willful' under the Copyright Act and (b) the recommendation that Plaintiff be awarded damages in the amount of $1,000.

**ARGUMENT**

I.  **Legal Standard**

The Court must review "de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id.

II. **Willfulness**

"In order to demonstrate that an infringement under Section 504(c)(2) was willful, the plaintiff must show that the infringer either had actual knowledge that it was infringing the owner's copyrights or acted in reckless disregard of those rights." Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc., No. SAG-18-03403, 2021 U.S. Dist. LEXIS 222009, at *53 (D. Md. Nov. 17, 2021) (internal quotation marks omitted).  "[W]illfulness in copyright law is satisfied by recklessness, and the case law defines recklessness broadly." BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc., 881 F.3d 293, 312 (4th Cir. 2018).  "[E]vidence that notice had been accorded to the alleged infringer… is perhaps the most persuasive evidence of willfulness." Wash. Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 674 (9th Cir. 2012) (quoting Chi-Boy Music v. Charlie Club, Inc., 930 F.2d 1224, 1227 (7th Cir. 1991)).

Copyright infringers are subject to increased liability if the infringement is willful. See 17 U.S.C. § 504(c)(2) (providing that "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000").  Thus, if a plaintiff elects to receive statutory damages (as Plaintiff did here), the default range within the Court's discretion to award is $750.00 - $30,000.00 (for non-willful and non-innocent infringement), with the Court able to increase such award up to $150,000.00 if willfulness is found.

"A determination of willfulness requires an assessment of a defendant's state of mind." Friedman v. Live Nation Merch., Inc., 833 F.3d 1180, 1186 (9th Cir. 2016). As a result, willfulness determinations are difficult when a defendant (as here) defaults and does not participate in the lawsuit. See, e.g. Pearson Educ., Inc. v. Aegis Trading Corp., No. 16-CV-0743 (GBD)(SN), 2017 U.S. Dist. LEXIS 45887, at *18 (S.D.N.Y. Mar. 27, 2017) ("The reason for why it is difficult to assess defendants' profits or plaintiffs' lost revenues is defendants' willful conduct and their default and refusal to participate in this litigation."). As a result, the vast majority of courts across the country will infer willfulness from a defendant's default.[1] A court, however, may also rely on evidence cited in the Complaint. See Gomez v. Midlo Floors LLC, Civil Action No. 3:22cv746, 2024 U.S. Dist. LEXIS 24593 (E.D. Va. Feb. 12, 2024):

> **When assessing the appropriate damages for copyright infringement after a default judgment, courts within this district typically cite to evidence in a complaint to support a finding of willful copyright infringement**. See, e.g., Umg Recordings Inc. v. Kurbanov, No. 1:18cv957 (CMH/TCB), 2021 U.S. Dist. LEXIS 250844, 2021 WL 6492907, at *9 (E.D. Va. Dec. 16, 2021), *report and recommendation adopted*, No. 1:18cv957 (CMH), 2022 U.S. Dist. LEXIS 216813, 2022 WL 20417526 (E.D. Va. Feb. 10, 2022) (**citing evidence in plaintiff's complaint to support a finding of willful copyright infringement, rather than inferring willfulness due to defendant's default**); Spencer v. Yellowcabservices.com,

---

[1] See, e.g. Globe Ent. & Media, Corp. v. Glob. Images USA, No. 2:20-CV-11630-CAS, 2022 U.S. Dist. LEXIS 123358, at *15 (C.D. Cal. July 11, 2022) (quoting Microsoft Corp. v. McGee, 490 F. Supp. 2d 874, 880 (S.D. Ohio 2007)) ("Where the defendant has defaulted, willful copyright infringement is proven."); see also Reiffer v. Shearwater Pac. Capital Mgmt. Llc, No. 18-cv-06053-JSW (RMI), 2020 U.S. Dist. LEXIS 227579, at *23 (N.D. Cal. May 13, 2020) ("Allegations of willful infringement are deemed to be true on default."); Harrington v. Equity Asset & Prop. Mgmt., No. 3:18-cv-00216-GPC-NLS, 2020 U.S. Dist. LEXIS 6105, at *24 (S.D. Cal. Jan. 13, 2020) ("Allegations of willful infringement are deemed to be true on default."); Sternbaum v. Refinery Lab, LLC, No. 22-cv-22002-BLOOM/Otazo-Reyes, 2022 U.S. Dist. LEXIS 201960, at *5-6 (S.D. Fla. Nov. 4, 2022) ("[A] court may infer that a defendant willfully infringed a plaintiff's copyright because of a defendant's default."); Original Appalachian v. Yuil Int'l Corp., 5 U.S.P.Q.2d (BNA) 1516, 1524 (S.D.N.Y. 1987) ("willfulness may be inferred from a defendant's failure to appear and defend in an action such as this"); Adlife Mktg. & Commc'n Co. v. Ad Post Graphics Media Mktg., No. 1:19-CV-1701, 2023 U.S. Dist. LEXIS 227938, at *21 (M.D. Pa. Dec. 21, 2023) ("Further concluding that Defendants' copyright infringement was willful because Defendants defaulted and decided not to defend against this action.").

> No. 1:20cv368 (TCB), 2020 U.S. Dist. LEXIS 263095, 2020 WL 13200117, at *5 (E.D. Va. Nov. 19, 2020) (same); Malibu Media, LLC v. Doe, No. 1:19cv519 (TCB), 2019 U.S. Dist. LEXIS 224076, 2019 WL 7476684, at *4 (E.D. Va. Dec. 9, 2019) (same); Strike 3 Holdings, LLC v. Doe, No. 1:21cv1140 (TCB), 2022 U.S. Dist. LEXIS 146419, 2022 WL 3337797, at *5 (E.D. Va. 2022) (same).

Gomez No. 3:22cv746, 2024 U.S. Dist. LEXIS 24593, at *20–21 (emphasis added). Whether this Court applies the standard that courts across the country have (e.g., inferring willfulness by virtue of default), or by relying on evidence cited in the Complaint, Defendant acted willfully for the reasons set forth below.

Here, the Magistrate notes in the Report that "[t]he undersigned is not convinced that PFP has met its burden of establishing willfulness."[2] In reaching this conclusion, the Report quotes a snippet from the Motion for Default Judgment… but does not address the actual allegations of the Complaint (as Gomez suggests should be done). First, Plaintiff noted that Defendant's willfulness was demonstrated by Defendant itself utilizing a copyright disclaimer on its website ("Copyright © 2022 Kiani's - All Rights Reserved."), which courts have routinely interpreted as a defendant representing that it owns each of the photographs published on its website. See, e.g., Bell v. ROI Prop. Grp. Mgmt., LLC, No. 1:18-cv-00043-TWP-DLP, 2018 U.S. Dist. LEXIS 127717, at *3 (S.D. Ind. July 31, 2018) ("[T]he willfulness of ROI's infringement is evidenced by the fact that at the bottom of the webpage on which the Indianapolis photograph was unlawfully published appeared the following: 'Copyright © 2017.' By placing a copyright mark at the bottom of its webpage that contained Mr. Bell's copyrighted Indianapolis Photograph, Mr. Bell asserts ROI willfully infringed his copyright by claiming that it owned the copyright to everything on the webpage"); John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc., Civil Action No.

---

[2] See Report, at p. 6.

3:12-cv-4194-M, 2013 U.S. Dist. LEXIS 61928, at *12-13 (N.D. Tex. May 1, 2013) ("Once on Defendant's website, Defendant asserted ownership of Plaintiff's Registered Work by including a copyright notice at the bottom of the page. Based on these allegations, the Court finds Plaintiff has sufficiently pled a willful violation…."). The Magistrate thus could have independently found Defendant's infringement to be willful based solely on the presence of a copyright notice, yet the Report does not address this point at all.

Second, willfulness is often demonstrated where (as here) a defendant receives notice of its infringement but refuses to remove and/or delays in removing the copyrighted work from its website/social media. See, e.g., Prepared Food Photos, Inc. v. Perry Wings Plus, Inc., No. 22-CV-61883-RAR, 2022 U.S. Dist. LEXIS 227304, at *10 (S.D. Fla. Dec. 19, 2022) ("Defendant's refusal to remove Plaintiff's Work after nearly a dozen communication attempts demonstrates Defendant's willfulness."); Burch v. Nyarko, 2007 U.S. Dist. LEXIS 55345, at *3 (S.D.N.Y. July 30, 2007) ("Nyarko's conduct throughout this action – reflected in his refusal to talk to Plaintiff, to remove the photographs promptly from the website, and to respond to this suit – supported a finding of willfulness under 17 U.S.C. § 504©(2)."); Schwabel v. HPT Serv., LLC, No. 3:17-cv-791-J-34JBT, 2018 U.S. Dist. LEXIS 171820, at *10 n.8 (M.D. Fla. Sep. 6, 2018) ("Because Defendant failed to remove the Photograph from the subject sites after Plaintiff demanded that he do so, the undersigned recommends that the infringements were willful."); Garvey v. Buzznick, LLC, No. 2:22-cv-00400-DBB, 2023 U.S. Dist. LEXIS 96680, at *7 (D. Utah June 1, 2023) ("[C]ourts have found willful infringement where a party informed defendants of potential infringement and the defendants took no action."); Lions Gate Films Inc. v. Saleh, No. 2:14-CV-06033-ODW-AGR, 2016 U.S. Dist. LEXIS 206242, at *8-9 (C.D. Cal. March 24, 2016) ("The Court finds that Defendants' inaction after learning of their specific infringing content is

sufficiently indicative of their willful infringement."); Korzeniewski v. Sapa Pho Vietnamese Rest., Inc., No. 17-CV-5721-MKB-SJB, 2019 U.S. Dist. LEXIS 1901, at *17 (E.D.N.Y. Jan. 3, 2019) (finding the continued display of the copyrighted work as a factor to conclude the infringement was willful); Prater Music v. Williams, No. 87-0362-CV-W-6, 1987 U.S. Dist. LEXIS 13979, at *8 (W.D. Mo. Nov. 3, 1987) ("Where a defendant continues to infringe upon copyrights despite repeated warnings, courts have found defendant's conduct to be willful."). Here, the Complaint asserts that Defendant refused and/or failed to remove the Work from its website notwithstanding multiple infringement notices/demands (via Federal Express, e-mail, and telephone) for such removal.³  Most importantly, the Complaint plainly alleges that, "[a]s of the date of this filing, the Work is still published on Defendant's website."⁴

The Report appears to ignore these allegations and instead misinterprets part of Plaintiff's Motion for Default Judgment. The Report notes that:

> after being notified of the infringement but before PFP filed suit, Kiani's removed the photo from its website. See Mot. At 14 (stating that Kiani's used the photo "through March 2023") and Compl. At 9 (indicating the complaint was filed on April 6, 2023).

As explained above, the Complaint alleges that the Work was on Defendant's website *as of the date of the filing of the Complaint* (April 6, 2023). The Report's confusion appears to stem from the assertion in the Motion for Default Judgment  that "*[b]y use of the Wayback Machine* (an internet archive system), Defendant has published/displayed the Work on its website since at least January 19, 2022 *through March 30, 2023*."⁵ See Mot. At 14. (emphasis added). March 30, 2023

---

³  See Complaint, at ¶ 31.

⁴  Id.

⁵  The Wayback Machine (http://web.archive.org/) is a digital archive of the World Wide Web founded by the Internet Archive.  Courts often take judicial notice of the Wayback machine's captures/screenshots of websites.  See, e.g. Martins v. 3PD, Case No. 11-11313-DPW, 2013 U.S. Dist. LEXIS 45753, at *47-49 n.8 (D. Mass. Mar. 28, 2013) ("I take judicial notice of various historical versions of the 3PD website available on the Internet Archive . . . as facts

was simply the last date that the Wayback Machine captured a screenshot that showed the image on Defendant's website – ***not*** the date by which Defendant had removed the Work from its website. The Report thus mistakenly assumes that Defendant had removed the Work from its website prior to the filing of this lawsuit, but this assumption is directly contradicted by the allegations of the Complaint itself (which Defendant is deemed to have admitted).

The Complaint alleges that Plaintiff discovered Defendant's infringement in November 2022 and notified Defendant of its infringement pre-lawsuit.[6] Admittedly, the Complaint and the Motion for Default Final Judgment do not include the date(s) of such pre-suit notices. However, if the Magistrate had any question as to when Plaintiff sent its infringement notice(s), the Magistrate could have raised that question as opposed to assuming the removal was prompt and deeming the notice insufficient to make a finding of willfulness. Had the Magistrate so inquired, the inquiry would have shown that the initial infringement notice was sent on January 19, 2023. The Complaint was filed on April 6, 2023. As alleged in the Complaint (and deemed admitted), Defendant continued to use Plaintiff's Work at least through the date of the filing of the Complaint, despite being actively on notice of the infringement for months. The fact that Defendant continued to use Plaintiff's copyright protected Work while possessing actual knowledge of its infringement is sufficient to demonstrate willfulness.

Accordingly, either in light of inferring willfulness from Defendant's default as many courts outside this Circuit have done, or in light of the evidence the Court could cite to in the

---

readily determinable by resorts to a source whose accuracy cannot reasonably be questioned."); Pond Guy, Inc. v. Aquascape Design, Inc., Case No. 13-13229, 2014 U.S. Dist. LEXIS 85504, at *9 (E.D. Mich. June 24, 2014) (taking judicial notice of the parties' historical presence as represented by the Internet Archive because "[a]s a resource the accuracy of which cannot reasonably be questioned, the Internet Archive has been found to be an acceptable source for taking of judicial notice.").

[6]     See Complaint, at ¶ 21.

Complaint, the Report erred by recommending that Plaintiff had not sufficiently established Defendant's willfulness.

### III. Plaintiff's Damages

The Report recommends that the Court should award Plaintiff $1,000.00 in statutory damages, rejecting Plaintiff's proffered damages calculation predicated on its $999.00/month subscription model. Here, the Report states that "PFP has not shown that Kiani's would have subscribed to PFP's service, as opposed to a competing and far less expensive service, which bears on whether PFP can show any actual damages for the alleged infringement."[7] This was error because, in so concluding, the Magistrate relied on its own assumptions about Defendant's subject state of mind rather than the objective evidence before the Court.

In rejecting Plaintiff's damages calculations, the Report correctly cites Dash v. Mayweather, 731 F.3d 303 (4th Cir 2013) for the proposition that "actual damages are generally calculated based on what a willing buyer would have been reasonably required to pay to a willing seller for [the] plaintiffs' work."[8] The Report, however, misapplies Mayweather in concluding that Plaintiff should only be awarded $1,000.00 in statutory damages. As the Report recognizes, an analysis of actual damages is an "***objective*** inquiry." Mayweather, 731 at 313 (emphasis added). But the Report then goes on to speculate that ***Defendant itself*** would not have subscribed to Plaintiff's library as opposed to a less expensive service (the prices of which the Report itself injects into the record).[9] In doing so, the Report morphs the *objective* test into a *subjective* application specific to Defendant.

---

[7]     See Report, at p. 8.

[8]     Id. at p. 5.

[9]     Id. at p. 8.

By assuming that Defendant would have subscribed to a less expensive service, the Report posits that Defendant "likely saved no more than $420 by using PFP's photo for free for fourteen months."[10]  But such supposition is not the objective standard as announced by Mayweather. Indeed, it is a dangerous standard that rewards any infringer who simply announces that it would not or could not have paid the copyright holder's ordinary price.  The question is not 'what would this particular defendant be willing to pay?' If damages are evaluated in such manner, then that would effectively defeat any plaintiff's ability to recover damages. Any defendant could simply say that it would only be willing to pay 'x' amount of dollars, and that would then become the damages that a plaintiff could recover.  A criminal defendant who steals expensive jewelry from a retail store is not excused by announcing that he would not have paid the store's advertised price or that he would not have paid anything.  But this is precisely the standard that the Magistrate would apply here to substantially reduce Plaintiff's damages.

The dangerous nature of the Report is further revealed by the cherry-picking of the least expensive subscription option available online to drive down Plaintiff's damages.  The Report assumes (without any testimony or evidence) that Defendant would have subscribed to the least expensive subscription service at the lowest rate available ($29.99/month x 14 months = $420.00 in purported savings).  But the Report itself identifies subscription plans for $49.99/month (which would amount to $700.00 in purported savings) and does not even fairly describe the subscription plans it does reference.  For example, the Report states that istockphoto.com has plans ranging from $29 - $40/month for a basic subscription.  The Report does not disclose, however, that istockphoto.com's plans range from $29 - $333.00 per month depending on the number of monthly

---

[10]  Id.

downloads a user utilizes (with the higher number at 50 downloads/month). See https://www.istockphoto.com/plans-and-pricing.[11] The same is true for the other subscription services identified in the Report, with monthly costs increasing to several hundred dollars depending on the number of downloads per month. Nor does the Report disclose that the world's largest licensor of food photography (Stock Food) offers to license photographs for substantially more. For example, for website use of a comparable photograph of a chicken wing platter (https://usa.stockfood.com/images/00688481-Buffalo-Wing-Platter-with-Carrot-and-Celery-Sticks), Stock Food offers such for $1,750.00 for up to 1 year of use. The point here is that the Report did not delve into the use restrictions, breadth of library, term commitments, etc. with respect to any of the other 'options' it identified for purposes of driving down Plaintiff's actual damages. None of that material was before the Court on the Motion for Default Judgment, and it was not proper for the Report to assume what, if anything, Defendant would or would not have paid for use of a photograph on its website.

Additionally, in Mayweather, the Fourth Circuit noted that "[u]nder the lost licensing fee theory relied upon by Dash, evidence of a copyright holder's prior licensing or valuation of his work can provide sufficient support for his actual damages claim." Id. at 317. Here, the Declaration of Rebecca Jones (the "Jones Decl.") [D.E. 11-1] specifically provides that Plaintiff "has numerous paying subscribers paying monthly subscription fees ranging from $999.00/month to $2,500.00/month." The Report ignores this allegation (or discounts it as Defendant is not the typical type of ad agency/grocery store subscriber) and the numerous courts across multiple

---

[11] The Report finds unreasonable Plaintiff's $999.00/month subscription model but fails to take into account that Plaintiff offers users the ability to download the entirety of its library of approximately 18,000 photographs with no monthly restriction on the number of downloads. Using istockphoto.com as a reference (which charges $333.00/month for up to 50 downloads), Plaintiff's pricing is substantially less on a per-photo basis (with istockphoto.com amounting to $6.66/photo and Plaintiff's library amounting to approximately $.06/photo).

jurisdictions that have all found Plaintiff's license to be a useful, and reasonable, tool in calculating its damages. For example, in <u>Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. v. Patriot Fine Foods LLC</u>, Judge Middlebrooks analyzed and accepted Plaintiff's position that its actual damages for the unauthorized use of a single photograph are the monthly fees it charges for access to the entirety of its library:

> Here, Plaintiff provides access to its library at a price $999.00 per month with a minimum twelve-month contract commitment, meaning, a licensee must pay $11,988 for access to any of Plaintiff's photographs for any amount of time within a one-year period. (DE 13, Ex. A. ¶¶ 4–5). Plaintiff has numerous clients who pay this annual subscription fee. (*Id.* ¶ 4). While that demonstrates that licensors have indeed licensed its library on an annual basis for $11,988, it is unclear whether any licensor has paid that amount to utilize a single photograph in the library. Nevertheless, I find $11,988 to be a useful proxy given the below-described difficulties in calculating with precision Plaintiff's actual damages.

<u>Prepared Foods Photos, Inc. v. Patriot Fine Foods LLC</u>, No. 21-82129-CV, 2022 U.S. Dist. LEXIS 205649, at *10 (S.D. Fla. Mar. 22, 2022). The same analysis was adopted by a multitude of other courts to subsequently consider the issue of Plaintiff's damages based on the facts before those courts. <u>See, e.g.</u> <u>Prepared Food Photos, Inc. v. 193 Corp.</u>, No. 1:22-cv-03832, 2022 U.S. Dist. LEXIS 205690 (N.D. Ill. Sep. 21, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of pre-registration usage of a single photo; <u>Prepared Food Photos, Inc. v. Miami Beach 411 Corp.</u>, No. 22-23197-CIV-ALTONAGA/Damian, 2022 U.S. Dist. LEXIS 216003 (S.D. Fla. Nov. 28, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of a single photo); <u>Prepared Food Photos, Inc. v. Fat Daddy Co.</u>, No. 22-61671-CIV-SINGHAL, 2022 U.S. Dist. LEXIS 216004 (S.D. Fla. Nov. 29, 2022) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use

with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Perry Wings Plus, Inc., No. 22-CV-61883-RAR, 2022 U.S. Dist. LEXIS 227304, at *24 (S.D. Fla. Dec. 19, 2022) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for a 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Silver Star of Brooklyn / Brooklyn's Best Inc., No. 1:22-cv-04196-WFK-CLP, 2023 U.S. Dist. LEXIS 22037 (E.D.N.Y. Jan. 23, 2023) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Chi.-Mkt.-Distrib., Inc., Civil Action No. 1:22-cv-03299-CNS-MEH, 2023 U.S. Dist. LEXIS 88407 (D. Colo. May 19, 2023) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of a single photo); Prepared Food Photos, Inc. v. Exec. Dining Club, Inc., No. 22-cv-9446 (ER), 2023 U.S. Dist. LEXIS 99676 (S.D.N.Y. May 25, 2023) (awarding Plaintiff $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Shadowbrook Farm LLC, No. 1:22-CV-00704 (LEK/ATB), 2023 U.S. Dist. LEXIS 110171 (N.D.N.Y. June 27, 2023) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. WaDaYaNeed, LLC, No. 1:22-CV-01270 (LEK/ATB), 2023 U.S. Dist. LEXIS 110993 (N.D.N.Y. June 28, 2023) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Exec. Dining Club, Inc., No. 22-cv-9446 (ER), 2023 U.S. Dist. LEXIS 99676, at *2 (S.D.N.Y. May 25, 2023) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Mikey's Famous Marinades Corp., No. 23-CV-1484 (JMA) (AYS),

2023 U.S. Dist. LEXIS 132222 (E.D.N.Y. July 31, 2023) (awarding $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for 1-year use with a 2x multiplier applied thereto). The Report would thus have this Court stand alone in rejecting the well-reasoned damages analyses in each of these other cases. While it is certainly in the Court's discretion to do so, the Report does not provide any sufficient basis for departing from this long line of cases in favor of an untenable, subjective standard.

"One of the Copyright Act's primary purpose is to deter future acts of infringement." Dream Games of Ariz., Inc. v. PC Onsite, L.L.C., No. CV-03-00433-PHX-ROS, 2010 U.S. Dist. LEXIS 153140, at *6–7 (D. Ariz. Mar. 18, 2010); see also Magnuson v. Video Yesteryear, 85 F.3d 1424, 1432 (9th Cir. 1996) ("[W]e are particularly concerned that the small award for damages in this case is insufficient to deter future copyright infringements…."); Pearson Educ., Inc. v. Aegis Trading Corp., No. 16-CV-0743 (GBD)(SN), 2017 U.S. Dist. LEXIS 45887, at *18 (S.D.N.Y. Mar. 27, 2017) ("Given the numerous infringement suits in this industry (including Shi, involving the same plaintiffs), *a substantial damage award is necessary* in order to deter not only these defendants but also other parties from unlawful behavior that damages lawful copyright holders.") (emphasis added).

Here, the $1,000.00 award recommended by the Magistrate does not serve the primary purpose of deterring future acts of infringement – whether by Defendant or other parties. As set forth above, the award is roughly equivalent to a mid-tier subscription to istockphoto.com, meaning a defendant caught with its hand in the proverbial cookie jar who refuses to remove a photograph from its website until after a lawsuit is filed would only be required to pay what it should have paid in the first place. If the worst punishment is that one must pay for what he/she violated the law to take, there is no deterrence (of Defendant or anyone else). Deterrence requires

a substantial award against copyright infringers, and the recommendation to award $1,000.00 falls far short of such. The Court should align itself with its sister courts and award a substantial sum of damages here – partially to 'punish' Defendant for its own willful conduct and partially to discourage others from committing similar acts of infringement. Adopting the Report serves the opposite purpose – it discourages legitimate copyright holders (such as Plaintiff) from enforcing their copyrights against infringers as it would quickly become cost-prohibitive to do so. No plaintiff (at least not one in its right mind) is going to pay an attorney an hourly rate to pursue and collect on a $1,000.00 judgment. And no sane attorney is going to take such case on a contingency, invest dozens of hours of time, and ultimately be paid a percentage of $1,000.00. Infringers are essentially free to run amok unless the courts recognize that widespread infringement requires an award of substantial damages to encourage plaintiffs to pursue their rights and discourage infringers from continuing to infringe.

## **CONCLUSION**

For the reasons set forth herein, Plaintiff respectfully requests that the Court (a) reject the Report's conclusion that Plaintiff did not establish willfulness; (b) reject the Report's conclusion that Plaintiff's damages are only $1,000; (c) find that Plaintiff's damages are $47,952.00; and (d) enter a Default Final Judgment otherwise consistent with the Report's findings.

Dated: March 22, 2024.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com

By: /s/ Daniel DeSouza, Esq._____
       Daniel DeSouza, Esq.

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

/s/ Daniel DeSouza, Esq.

Daniel DeSouza